[No. E006499. Fourth Dist., Div. Two. July 23, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT DEAN HARLAN, Defendant and Appellant.

**COUNSEL**

David Kogus, under appointment by the Court of Appeal, for Defendant and Appellant.

Appellate Defenders, Inc., and Neil Auwarter as Amici Curiae on behalf of Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Pat Zaharopoulos and Karl T. Terp, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

DABNEY, J.—A jury found Robert Dean Harlan guilty of committing a lewd act with a child under 14 (Pen. Code, § 288, subd. (a))[1] and found that he had engaged in substantial sexual conduct (§ 1203.066, subd. (a)(8)). He was sentenced to state prison for the middle term of six years.

Harlan contends on appeal that the trial court erred in (1) admitting evidence that Harlan wore women's underwear, (2) excluding evidence about the victim's masturbation and erections, (3) permitting expert testimony on the reactions of child molestation victims, and (4) failing to instruct the jury on the lesser related offense of battery. Appellate Defenders, Inc., and Neil Auwarter (collectively, amici) appearing as amici curiae on behalf of Harlan, assert in addition that giving CALJIC No. 2.20.1 was prejudicial error and that the testimony of the victim, a four-year-old child, did not constitute substantial evidence.

### FACTS

The victim, Jonathon T., four years and eleven months old at time of trial, testified that Harlan had sucked his "privacy." The victim pointed to his genitals to indicate what he meant by the term. The victim testified that when it happened, Harlan was wearing pantyhose and a bra, and it occurred on a rainy day before the victim went to preschool.

In mid-August 1988 the victim told his mother about the incident. Harlan had babysat the victim for three years every day before and after the victim went to preschool, but had stopped doing so about two weeks before the disclosure. The victim's mother testified that the victim's behavior had been unusually unruly from March to August 1988. Harlan had told the victim's mother he liked to wear women's underclothing, and that he bet his underwear was prettier than hers. The mother never mentioned this conversation to the victim. At trial, the parties stipulated that on April 6, 1988, Harlan wore women's underclothes.[2]

Ms. Dwyer-Elias, a licensed clinical social worker, testified as an expert on the reactions of child molestation victims. She testified that children usually do not disclose the molestations right away; a crisis in the child's life often prompts the disclosure; disclosure frequently occurs after the victim is separated from the offender; the victim's behavior usually changes after the molestation; boys are molested away from their homes more frequently

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] Harlan had been arrested on that date on unrelated charges and was wearing women's underclothing when he was booked. The jury was not told of the arrest.

than are girls; boys have more difficulty than girls in talking about the molestation; and children generally change the facts surrounding the incident. Dwyer-Elias had never examined or treated the victim.

*Defense Evidence*. The director of the victim's preschool testified that the victim had behavior problems the entire time she worked at the preschool. She stated that the victim used the term "pee pee" instead of "privacy" for his genitals, and that the victim lied to get out of trouble.

The victim was impeached with his inconsistent preliminary hearing testimony as to whether Harlan's wife was in the house when the incident occurred, whether the incident occurred before or after preschool, whether Harlan had orally copulated him once or twice, and whether he told his mother immediately or waited before telling her about the molestation.

### DISCUSSION

*Section 352*. Harlan moved *in limine* to exclude evidence that he wore women's underwear on the basis that such evidence was more prejudicial than probative. The court denied the motion, stating, "I think in today's society that cross-dressing is not so unusual as to have the devastating effect that you fear. And I do think it being a four-year-old child that corroboration is necessary and that's one of the things that might tend to corroborate his testimony."

Harlan now contends that the trial court should have exercised its discretion under Evidence Code section 352 to exclude such evidence. Harlan contends that such evidence was extremely inflammatory, yet added nothing to the prosecution case because Harlan was well known to the victim and there was no issue of identity.

Prejudicial evidence " 'uniquely tends to evoke an emotional bias against . . . [one party] as an individual and . . . has very little effect on the issues.' [Citation.]" (*People* v. *Wright* (1985) 39 Cal.3d 576, 585 [217 Cal.Rptr. 212, 703 P.2d 1106].) Under Evidence Code section 352, the court must strike a balance between the probative value of the evidence and the danger of prejudice. The court must consider " 'the relationship between the evidence and the relevant inferences to be drawn from it, whether the evidence is relevant to the main or only a collateral issue, and the necessity of the evidence to the proponent's case as well as the reasons recited in section 352 for exclusion.' [Citation.]" (39 Cal.3d at p. 585.)

The central issue in this case was the victim's credibility. His ability to recall and describe the circumstances of the act charged, including the

clothing the perpetrator wore at the time, was highly relevant. Although Harlan's behavior was unusual, it was not "devastating." ■ We do not disturb the trial court's exercise of discretion in admitting evidence "unless there is a manifest abuse of that discretion resulting in a miscarriage of justice. [Citations.]" (*People* v. *Milner* (1988) 45 Cal.3d 227, 239 [246 Cal.Rptr. 713, 753 P.2d 669].) We find no abuse of discretion.

*Exclusion of Defense Evidence.* During defense counsel's cross-examination of the victim's mother, the following exchange took place:

"Q Did [the victim] run around the house, your house, naked?

"A Yeah.

"Q Did he frequently have an erection?

"A Once in awhile.

"Q Did he play with himself a lot?"

The prosecutor objected on the bases of relevancy and failure to comply with Evidence Code section 782[3] and the trial court sustained the objection. Harlan challenges that ruling.

■ Harlan argues that Evidence Code section 782 does not apply because the evidence was not offered to attack the credibility of the complaining witness. At trial defense counsel argued that the evidence went to "the state of [the victim's] knowledge about what he felt and thought with regard to his privates." This stated purpose relates directly to the victim's credibility, and falls squarely within section 782.

Harlan next argues that masturbation is not "sexual conduct" within the meaning of Evidence Code section 782. The statute does not explicitly include masturbation as prior sexual conduct, and no reported California case has addressed the issue. Harlan asserts that in determining whether section 782 covers particular sexual acts, we should focus on whether the victim's conduct is "blameworthy." He contends that the proffered evidence would thus be admissible because masturbation by a child is a "normal instinct." However, in our view, any sexual activity of a child as young as the victim here would not be "blameworthy." Thus, Harlan's test for admissibility would essentially eliminate the protections of section 782 for very young victims.

---

[3] Evidence Code section 782 provides that in any prosecution for sexual offenses, before evidence of the victim's sexual conduct may be introduced to attack the victim's credibility, certain procedures must be followed, including the filing of a written motion supported by an affidavit in which the offer of proof is stated.

Moreover, Harlan's position finds no support in legislative history. In 1987, the Legislature amended Evidence Code section 782 to include sexual crimes against children within its coverage. (Stats. 1987, ch. 177, § 1, p. 1133.) The Legislative Counsel's Digest stated that the amendment was passed to "require the same specific detailed procedure if evidence of the sexual conduct of an alleged victim is offered to attack the credibility of the alleged victim in a prosecution involving lewd or lascivious acts as specified, upon a child under the age of 14 years." (Legis. Counsel's Dig., Assem. Bill No. 939 (1987 Reg. Sess.) Summary Dig., p. 56.) The Legislature obviously intended to protect children from embarrassing personal disclosures, regardless of the blameworthiness of the child's conduct. We conclude that section 782 covers the evidence proffered in this case. (Cf. *People* v. *Casas* (1986) 181 Cal.App.3d 889, 895 [226 Cal.Rptr. 285] [ruling that the term "sexual conduct" in section 782 should not be construed narrowly].)

Moreover, evidence of the victim's sensations and whether the victim experienced an erection during the molestation was irrelevant. In *People* v. *Nemie* (1978) 87 Cal.App.3d 926 [151 Cal.Rptr. 32], the trial court rejected the defendant's attempt to introduce evidence of a rape victim's lack of sexual experience to show that the victim had " 'not had sufficient prior sexual experience to be capable of possessing the requisite knowledge whether a sexual penetration did in fact occur, . . .' " (*Id.*, at p. 929.) The appellate court found no error in curtailment of this line of questions, noting, "There was no showing that prior sexual experience is necessary for a rape victim to know what type of object penetrated her vagina; lack of sexual experience by the victim would not necessarily be probative. [Citation.]" (*Ibid.*)

Harlan was charged with committing a lewd act on a child with an allegation of substantial sexual conduct, i.e., oral copulation. "The law does not require as an essential element of the crime that the lust, passions or sexual desires of either of such persons be actually aroused, appealed to, or gratified." (CALJIC No. 10.41 (5th ed. 1988).) Oral copulation is accomplished by "[a]ny contact, however slight, between the mouth of one person and the sexual organ . . . of another person . . . ." (CALJIC No. 10.45 (5th ed. 1988).) Neither proof of penetration nor of ejaculation is required. (*Ibid.*) The victim's description of Harlan's conduct was unambiguous. We conclude evidence of the victim's masturbation and familiarity with genital sensations was properly excluded as irrelevant.

■ *Expert Testimony.* Harlan first contends that Dwyer-Elias was not qualified to testify as an expert on the reactions of child molestation victims. A person may testify as an expert if he or she has the "special knowledge, skill, experience, training, or education sufficient to qualify him as an expert

on the subject to which his testimony relates." (Evid. Code, § 720.) ■ The trial court has wide discretion to determine whether a witness qualifies as an expert, and we will not disturb its ruling on appeal unless a clear abuse is shown. (*Chadock* v. *Cohn* (1979) 96 Cal.App.3d 205, 209 [157 Cal.Rptr. 640].)

■ Dwyer-Elias's qualifications are apparent from the record. She has a master's degree in social work, has taken specialized training in treatment of sexual abuse and is familiar with current literature and research in the field of child sexual abuse. She testified that through her training and her work with several hundred sexually abused children, she is familiar with characteristics such children frequently exhibit. The trial court did not abuse its discretion in permitting Dwyer-Elias to testify as an expert.

Harlan also asserts that the subject of Dwyer-Elias's expert testimony did not pass the *Kelly/Frye* [4] test. ■ Under the *Kelly/Frye* test, when expert testimony based on a new scientific technique is offered, the proponent of the testimony must first establish the reliability of the method and the qualifications of the witness. "Reliability of the evidence is established by showing 'the procedure has been generally accepted . . . in the scientific community in which it developed[,]' [citations] . . . ." (*In re Sara M.* (1987) 194 Cal.App.3d 585, 593 [239 Cal.Rptr. 605].) In turn, the court in *Sara M.* relied on *People* v. *Bledsoe* (1984) 36 Cal.3d 236 [203 Cal.Rptr. 450, 681 P.2d 291] as authority for the proposition that the expert's testimony should be excluded under the *Kelly/Frye* rule. In *Bledsoe*, the California Supreme Court ruled that evidence the victim was suffering from rape trauma syndrome was inadmissible to prove that a rape had occurred. (*Id.*, at p. 251.)

In *People* v. *Stoll* (1989) 49 Cal.3d 1136 [265 Cal.Rptr. 111, 783 P.2d 698], the court explained its holding in *Bledsoe*: "The Attorney General argues that, under *Bledsoe, supra,* 36 Cal.3d 236, use of 'syndrome' or 'profile' terminology by a mental health professional makes the diagnosis seem 'scientific' to a jury, and thus invokes *Kelly/Frye*. We adopted no such per se rule in *Bledsoe*, despite its reference to concerns raised in out-of-state cases. We are not persuaded that juries are incapable of evaluating properly presented references to psychological 'profiles' and 'syndromes.'" (*Stoll, supra,* p. 1161, fn. 22.). The *Stoll* court held that a psychologist's opinions that the defendants showed no obvious psychological or sexual problems was admissible circumstantial evidence that they did not commit the charged sexual offenses, ruling that the expert opinions, and the matters on which they were based, i.e., "professional experience with other individuals

---

[4] From *People* v. *Kelly* (1976) 17 Cal.3d 24, 30 [130 Cal.Rptr. 144, 549 P.2d 1240]; *Frye* v. *United States* (D.C. Cir. 1923) 293 Fed. 1013, 1014.

in similar situations, knowledge of [defendants] test results, knowledge about the charges against them, and [the expert's] personal assessments of them" (*id.*, at p. 1149), "meet traditional standards for competent expert opinion, without need for additional screening procedures applicable to new, novel, or experimental 'scientific' evidence not previously accepted in court." (*Id.*, at p. 1161.) ▮▮ Dwyer-Elias's opinion was based on her clinical experience with child sexual abuse victims and on her familiarity with professional literature in the area. The *Kelly/Frye* rule does not apply to this type of evidence. (*Ibid.*)

Harlan next argues that the expert testimony was improper because the defense did not put in issue any of the paradoxical behaviors of child molestation victims, such as recantation. (*People* v. *Bowker* (1988) 203 Cal.App.3d 385 [249 Cal.Rptr. 886].) The *Bowker* court held that the trial court erred in admitting the expert testimony of a psychologist on the Child Sexual Abuse Accommodation Syndrome (CSAAS), in the absence of a proper foundational showing of need to rebut popular misconceptions undermining the victims' credibility. (*Id.*, at pp. 393-394.)[5]

In *Bowker*, the prosecutor proffered the expert testimony to " 'assist the jury' and to 'explain [children's] behavior.' " (*Bowker, supra,* 203 Cal.App.3d at p. 389.) The court conducted a hearing out of the presence of the jury to determine whether the expert testimony was admissible. The court ruled that the testimony could be admitted if limited to child sexual abuse victims as a class, and only if the victims' credibility was challenged. (*Ibid.*)

In this case, the prosecutor filed points and authorities in support of his motion to permit the expert testimony. The prosecutor asserted that in cross-examination, defense counsel attacked the victim's credibility by attempting to show that he had made inconsistent statements and had delayed in reporting the molestation. The prosecutor offered the expert testimony to explain such behavior of the victim. The prosecutor asserted that it was outside the common experience of jurors that such behavior was typical of molestation victims. The court ruled that the expert could testify, but admonished the prosecutor not to elicit any opinions concerning the victim and to limit his questioning to general concepts or observations of victims as a class.

Unlike in *Bowker*, the prosecutor here explicitly identified the misconceptions about victims' behavior, i.e., delayed disclosure and inconsistent state-

---

[5] The *Bowker* court also ruled that the court erred in failing to instruct the jury that it could consider such evidence only in explaining the victim's behavior, not as proof that the molestation had occurred. (*Bowker, supra,* 203 Cal.App.3d at p. 394.) Here, unlike in *Bowker*, the court instructed the jury twice as to the proper use of the expert testimony.

ments, which the testimony was intended to rebut. We find no error in the court's ruling permitting the expert to testify.

Harlan next argues that despite the court's ruling limiting the evidence, the prosecutor nonetheless elicited testimony which referred specifically to the victim. Harlan contends that the expert testimony was tied too closely to the facts of the case and led to the impression that the victim must have been molested because he exhibited the characteristics of other victims Dwyer-Elias had treated. For instance, the expert testified that children often make their initial disclosure of the molestation when there has been a crisis in their lives, such as a divorce. Here, the victim's father filed for a divorce in March 1988 (although the parents had been separated for three years). Moreover, Dwyer-Elias testified that children typically disclose the molestations when they are separated from the molester.[6] Here, the victim told his mother of the incident about two weeks after Harlan ceased babysitting for him. The testimony Harlan has challenged, apart from that his own counsel elicited on cross-examination, related directly to the popular misconception about delayed disclosure. We find no error in the admission of such testimony.

■ *Lesser Related Offense.* The trial court denied Harlan's counsel's request for an instruction on the lesser related offense of battery. Harlan now asserts that the trial court should have given the instruction because that offense was within the scope of the evidence, and it was closely related to the charged offense.

■ In *People* v. *Geiger* (1984) 35 Cal.3d 510 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055], the court held that upon a defendant's request, the trial court must instruct the jury on lesser related offenses if three prerequisites are met: (1) there must be "some basis, other than an unexplainable rejection of prosecution evidence, on which the jury could find the offense to be less than that charged" (*id.*, at p. 531); (2) the offense "must be one closely related to that charged and shown by the evidence" (*ibid.*); and (3) the defendant must have relied "on a theory of defense that would be consistent with a conviction for the related offense." (*Ibid.*) ■ Here, if the jury believed the victim's testimony that Harlan sucked his private parts, it had no choice but to find Harlan guilty of the offense charged. If

---

[6] Most of the testimony which related more specifically to the victim emerged during cross-examination. For example, defense counsel asked Dwyer-Elias about children who exhibit no shame, embarrassment or feeling of responsibility and about children who claim the abuse occurred only once and they disliked it. These questions do not appear to refer to the class of child molestation victims, but specifically to the victim in this case. Defense counsel also asked if children commonly use terms for their anatomy they have not used before. Here, the victim used the term "privacy" when referring to the molestation when other evidence showed that he commonly referred to his genitals as his "pee pee."

the jury did not believe the victim's testimony, it had to find Harlan not guilty; no evidence suggested a touching which did not amount to lewd and lascivious conduct. The first *Geiger* prerequisite is not met and the trial court had no duty to instruct the jury on battery.

*Reliability of Child Witness.* ■ Amici curiae assert that the victim's story was essentially uncorroborated, and that because the victim was less than five years old, his testimony alone cannot be considered substantial evidence to support the conviction. ■ An accused may be convicted only upon substantial evidence, that is, evidence which is " 'of ponderable legal significance . . . reasonable in nature, credible and of solid value,' " establishing each element of the offense beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].) Reversal is required when the reviewing court, viewing the evidence in the whole record in the light most favorable to the prosecution, finds the evidence as to one or more elements of the offense to be not substantial. (*Id.*, at pp. 576-577.)

■ Amici curiae acknowledge the numerous authorities which establish that corroboration of the child's testimony is not a necessary element of proof in a prosecution for lewd acts on a child under 14. (E.g., *People v. Morales* (1967) 254 Cal.App.2d 194, 199 [61 Cal.Rptr. 764] [thirteen-year-old]; *People v. Scholl* (1964) 225 Cal.App.2d 558, 561 [37 Cal.Rptr. 475] [eight-year-old]; *People v. Pilgrim* (1963) 215 Cal.App.2d 374, 379 [30 Cal.Rptr. 170] [six-year-old].) Amici curiae note, however, that no California court has expressly ruled that this doctrine applies to the testimony of a victim only four years old. Moreover, amici curiae argue that courts must separate a child's competency to testify from the child's reliability as a witness in determining whether evidence to support a conviction is substantial. Amici curiae contend that the requirement of competency deals only with the threshold question of whether a witness should be allowed to testify at all; it does not address whether the witness' testimony, standing alone, is sufficient evidence to convict.

Citing various scientific studies, amici curiae argue that the testimony of young children is inherently unreliable, in that they have difficulty distinguishing between fact and fantasy and between right and wrong; they make false statements to embellish incomplete recollections; and they are prone to suggestion. Amici curiae complain that California courts have long recognized the special risks inherent in the testimony of young children, yet have repeatedly rejected any requirement that such testimony be corroborated. However, in *People v. Jones* (1990) 51 Cal.3d 34 [270 Cal.Rptr. 611, 792 P.2d 643], the California Supreme Court conducted its own review of the literature and concluded, "Recent studies have undermined traditional notions regarding the unreliability of child witnesses, their untruthfulness,

susceptibility to leading questions, or inability to recall prior events accurately. 'Empirical studies have produced results indicating that most of these traditional assumptions are completely unfounded.' [Citations.]" (*Id.*, at p. 54.)

The law is contrary to amici curiae's position. Evidence Code section 700 states, "Except as otherwise provided by statute, every person, *irrespective of age*, is qualified to be a witness and no person is disqualified to testify as to any matter." (Italics added.) Under Evidence Code section 701, subdivision (a)(2), only a person who is "[i]ncapable of understanding the duty of a witness to tell the truth" or who is incapable of expressing himself (*id.*, subd. (a)(1)) is disqualified to be a witness.

Moreover, Evidence Code section 411 states: "Except where additional evidence is required by statute, the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact." Amici curiae respond that a four-year-old child is not a witness "entitled to full credit." In *Jones, supra*, the Supreme Court reiterated, "[I]t is not a proper appellate function to reassess the credibility of the witnesses. Moreover, it is now well established that a child's testimony cannot be deemed insubstantial merely because of his or her youth. Thus, 'under present law, no distinction is made between the competence of young children and that of other witnesses [citations].' [Citations.]" (*Jones, supra*, 51 Cal.3d at p. 54.)

In our view, the rule amici curiae propose would virtually insulate child molesters from prosecution. Generally, the victim and the perpetrator are the only witnesses, and molestation frequently leaves no physical evidence. This is a strong policy consideration against adopting the position amici curiae advance.

The court in *People* v. *McDonald* (1984) 37 Cal.3d 351 [208 Cal.Rptr. 236, 690 P.2d 709, 46 A.L.R.4th 1011] suggested a better approach by which a defendant may challenge the reliability of the evidence against him. In *McDonald*, the defendant challenged the trial court's ruling excluding expert testimony on factors which affect the reliability of eyewitness identifications. The Supreme Court reviewed the extensive case law and professional literature on the subject of the high probability of error in eyewitness identifications. (*Id.*, at pp. 363-365.) The court concluded, "The consistency of the results of these studies is impressive, and the courts can no longer remain oblivious to their implications for the administration of justice." (*Id.*, at p. 365.) Next, the court reviewed the defendant's offer of proof and determined that the expert's proffered testimony was beyond the common knowledge of jurors and thus was a proper subject for expert testimony. Finally, the court reviewed the circumstances under which it would be error to exclude such testimony. The court held, "when an eyewitness iden-

tification of the defendant is a key element of the prosecution's case but is not substantially corroborated by evidence giving it independent reliability, and the defendant offers qualified expert testimony on specific psychological factors shown by the record that could have affected the accuracy of the identification but are not likely to be fully known to or understood by the jury, it will ordinarily be error to exclude that testimony." (*Id.*, at p. 377.)

We prefer this approach to that proposed by amici curiae which would immunize an accused child molester when the only witness against him is the victim. A defendant may, under current law, offer expert testimony to challenge the victim's testimony in appropriate cases, preserving the jury's right to make ultimate determinations on the credibility of the witnesses. (*McDonald, supra,* 37 Cal.3d at p. 377.)

In *People* v. *Vargas* (1988) 206 Cal.App.3d 831, 852 [253 Cal.Rptr. 894], the court again held that no corroboration was required when the defendant was convicted of molestation based on the testimony of 12- and 13-year-old victims. The *Vargas* court relied on *People* v. *Thomas* (1978) 20 Cal.3d 457 [143 Cal.Rptr. 215, 573 P.2d 433], in which the Supreme Court affirmed a trial court's rejection of a cautionary instruction regarding the testimony of child witnesses in sexual abuse cases. The *Thomas* court reasoned, relying on California law on witness competency, that not all children's testimony in such cases is inherently suspect. (*Id.*, at p. 471.) However, Chief Justice Bird noted in her dissent, "The majority confuse[d] *competency* of a witness with *reliability* and conclude[d] that since a child is a competent witness, a cautionary instruction as to the reliability of a child's testimony is not required." (*Id.*, at p. 471, dis. opn. of Bird, C. J., original italics.) No California court has since adopted this position, and we likewise decline the invitation to do so.

Moreover, amici curiae's argument fails to acknowledge the established standards for evaluating testimony on appeal. ▇ " ' "To warrant the rejection of the statements given by a witness who has been believed by the [trier of fact], there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. [Citation.]" . . . .' [Citation.]" (*People* v. *Barnes* (1986) 42 Cal.3d 284, 306 [228 Cal.Rptr. 228, 721 P.2d 110].) ▇ In applying this standard in *Vargas*, the court stated, "[The victim's] testimony may not be rejected simply because of her youth or the nature of the crime to which she testified. Moreover, nothing in the record demonstrates [her] testimony was

inherently improbable or physically impossible. Although [she] did not testify to specific details as to every incident, there is no indication in the record that she has no memory of the individual incidents. In any event, confusion or inability to recall details of the incidents in question goes to the witness's credibility, not to the sufficiency of the evidence. The record discloses no ambiguity about the nature of the act perpetrated on the victim." (*Vargas, supra,* 206 Cal.App.3d at p. 853.)

We conclude that California law does not require corroboration of the testimony of a child sexual abuse victim, and that the victim's testimony was sufficient evidence on which to convict Harlan.

*Due process.* Amici curiae raise the same argument under the guise of a due process requirement. Amici curiae draw an analogy between a young child's testimony and other evidence and testimony which, for policy reasons, is considered inherently unreliable. Amici curiae point out that the testimony of an accomplice must be corroborated to sustain a conviction (§ 1111), even if the accomplice's competency is not challenged, and that an out-of-court identification of a defendant not confirmed at trial must be corroborated. Even if we were to accept amici curiae's position that a child's uncorroborated testimony should be compared to an accomplice's uncorroborated testimony, for which corroboration is required, that would not mean Harlan's right to due process was violated. In *In re R. C.* (1974) 39 Cal.App.3d 887 [114 Cal.Rptr. 735], a juvenile appealed from a determination of wardship based on uncorroborated accomplice testimony. The juvenile argued he was deprived of due process, reasoning that proof beyond a reasonable doubt requires corroboration of accomplice testimony. The court rejected this notion, explaining, "The California requirement that accomplice testimony be corroborated is a legislative refinement; it is not a rule included within the traditional concepts of due process. [Citation]" (*Id.,* at p. 893.) Other California courts which have considered the issue have reached the same conclusion: That the requirement of corroboration "is a rule of historical and statutory importance and not a tenet of constitutional law." (*In re Eugene M.* (1976) 55 Cal.App.3d 650, 657 [127 Cal.Rptr. 851]; accord *In re Mitchell P.* (1978) 22 Cal.3d 946, 949 [151 Cal.Rptr. 330, 587 P.2d 1144].) Neither the vast majority of state courts nor federal courts require corroboration of accomplice testimony.[7] Due process does not require the testimony of a child witness to be corroborated.

---

[7] According to amici curiae, the State of Nebraska requires corroboration of the testimony of children in sexual abuse cases (*State* v. *Jackson* (1986) 222 Neb. 384 [383 N.W.2d 794]), and the State of Illinois does so if the child's testimony is not clear and convincing (*State* v. *Escobedo* (1986) 151 Ill.App.3d 69 [502 N.E.2d 1263]).

CALJIC No. 2.20.1. Finally, amici curiae argue that it was prejudicial error for the court to instruct the jury with CALJIC No. 2.20.1.[8] The instruction, as read to the jury, was as follows: "Now, in evaluating the testimony of a child ten years of age or younger, you should consider all of the factors surrounding the child's testimony, including the age of the child and any evidence regarding the child's level of cognitive development. [¶] Although because of age and level of cognitive development a child may perform differently as a witness from an adult, that does not mean a child is any more or less credible a witness than an adult. You should not discount or distrust the testimony of a child *solely* because he or she is a child. [¶] 'Cognitive' means the child's ability to perceive, to understand, to remember, and to communicate any matter about which the child has knowledge." (Italics added.)

Amici curiae assert that the instruction is unconstitutional because it "unduly inflates the testimony of children and invades the province of the jury as determiners of witness credibility . . . ." Amici curiae claim that the instruction "plainly precludes jurors not only from discounting a child's testimony because of age; it also specifically precludes jurors from discounting a child's testimony based on the child's cognitive development and immature performance as a witness-key factors in assessing the credibility of a child."

In our view the second sentence of CALJIC No. 2.20.1 does not instruct the jury that it may not consider a child's age and cognitive ability in deciding his/her credibility as a witness. The use of the word "perform" in the second sentence implies nonverbal action. This sentence merely advises the jury that due to the age and level of cognitive development, a child may act differently on the witness stand than an adult. It does not relate to the truth or falsity of the content of the child's *testimony*. The language refers to one of many factors to be applied by a jury in determining a witness's credibility, namely, the demeanor and manner of the witness while testifying. (See CALJIC No. 2.20.)

Additionally, the cautionary aspect of the second sentence is neutral, in that it advises that any portion of a child's performance on the witness stand which is attributable to age or cognitive ability, does not mean a child is "any more or less credible a witness than an adult."

Moreover, the third sentence in CALJIC No. 2.20.1 relates to the child's *testimony*. It states such testimony should not be discounted or distrusted solely because she or he is a child. This sentence does not give any greater

---

[8] Section 1127f requires an instruction in the language of CALJIC No. 2.20.1 to be given on the request of a party whenever a witness 10 years of age or younger testifies.

credibility to the testimony of a child than an adult. It simply advises the jury that it should not give *less* credibility to a child just because the witness is a child. This is consistent with section 1127f, which is present state policy.

Amici curiae next assert that CALJIC No. 2.20.1 impermissibly usurps the role of the jury, in that it withdraws from the jury the right to make findings on the credibility of witnesses, to the extent it requires jurors to ignore a child witness's limited cognitive ability and "different" performance when assessing credibility.

■■■ The right of a criminal defendant to a trial by jury includes the right to have factual and credibility issues resolved by the jury. (*People v. Rincon-Pineda* (1975) 14 Cal.3d 864, 886 [123 Cal.Rptr. 119, 538 P.2d 247, 92 A.L.R.3d 845].) A trial court may comment on the " 'testimony and credibility' " of witnesses to the extent "necessary for the proper determination of the cause. (Cal. Const., art VI, § 10.)" (*Id.*, at p. 885.) However, in doing so, the trial court must exercise "great care, lest the province of the jury as trier of fact be invaded." (*Id.*, at p. 886.) The trial court's comments must not distort evidence or withdraw material evidence from consideration. (*People v. Oliver* (1975) 46 Cal.App.3d 747, 753 [120 Cal.Rptr. 368].)

■■■ Again, we disagree with amici curiae on this point. The instruction simply requires jurors not to find child witnesses unreliable *solely* because of their age. Rather, they are to consider the child witness's testimony *in light of* evidence of his or her cognitive development and other factors. As the *Jones* court explained, the instruction requires us to "focus on factors other than the youth of the victim/witness." (*Jones, supra*, 51 Cal.3d at p. 55.)

Finally, amici curiae argue that CALJIC No. 2.20.1 violated Harlan's constitutional right to confront witnesses. Amici curiae contend that the instruction limited Harlan's ability to impeach the victim by limiting the inferences the jury could draw from his cognitive ability and immature performance. Amici curiae rely for this position on *Brown v. United States* (1896) 164 U.S. 221 [41 L.Ed. 410, 17 S.Ct. 33], in which the court found reversible error when the trial court restricted the defendant's ability to impeach a prosecution witness by instructing the jury that the prosecution witness could be impeached only through the testimony of witnesses who were themselves "good" and "honest." (*Id.*, at pp. 224-225 [41 L.Ed. at p. 411].)

Brown is inapposite; CALJIC No. 2.20.1 does not require the jury to draw any particular inferences from a child's cognitive ability, age and performance as a witness. Rather, it instructs the jury to consider such factors in evaluating a child's testimony.

We find no error in the use of CALJIC No. 2.20.1.

## DISPOSITION

The judgment is affirmed.

Hollenhorst, Acting P. J., and Timlin, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 17, 1990.