Filed 12/4/13  P. v. Woodberry CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANDRE LAMON WOODBERRY,<br><br>    Defendant and Appellant. | 2d Crim. No. B245613<br>(Super. Ct. No. KA093008)<br>(Los Angeles County) |

A jury found Andre Lamon Woodberry guilty of second degree robbery.  (Pen. Code, § 211.)[1]  The jury also found true the special allegation that the offense was committed for the benefit of, at the direction of, and in association with a criminal street gang.  (§ 186.22, subd. (b)(1)(C).)  Woodberry admitted having suffered prior convictions within the meaning of sections 1203, subdivision (e)(4) and 667.5, subdivision (b).[2]  He was sentenced to a total of 14 years in prison.  We affirm.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

[2] The jury found not true that Woodberry personally used a firearm in the commission of the robbery.  (§ 12022.53, subd. (b).)  But the information contains no such allegation against Woodberry.

FACTS

At approximately 1:05 p.m., on January 6, 2011, Kevin Davis was standing in front of Bassett High School waiting for his girlfriend. A car drove up and four men, including Woodberry, got out. Davis knew Woodberry as "Woody." Davis recognized Woodberry as someone who had given his cousin and other family members tattoos. Davis had a "beef" with Woodberry because Davis's cousin's girlfriend ended her relationship with the cousin and became Woodberry's girlfriend.

One of the men asked Davis if he knew what neighborhood he was in. Davis replied "No," and the man said, "[T]his is Bassett." Davis said he was waiting for his girlfriend and had "no problem." The man pulled out a handgun and asked Davis what was in his pocket. Davis denied he had anything in his pocket. Woodberry punched Davis in the eye and took $1,000 and an "eight ball" of methamphetamine from Davis's pocket. An eight ball is much more than would be used by a single individual. The four men ran away.

Davis called the police. He told Los Angeles Sherriff's Detective Gerald Groenow that Woody had robbed him.

Groenow testified that Woodberry is a member of the Bassett gang. The gang has approximately 300 members. The gang's primary activities include robbery, narcotics and murder. The prosecution presented Groenow with a hypothetical based on the facts of the underlying offense. Groenow opined that the robbery was committed for the benefit of the Bassett gang.

*Defense*

Davis admitted that he is a gang member and that he has been charged with possession of drugs for sale.

Louis Lujan is Woodberry's uncle and Baselisa Lujan is Woodberry's great-grandmother. They both live with Woodberry. Both Lujans testified Woodberry was at home at the time of the robbery.

2

*Motion For New Trial*

Woodberry moved for a new trial based on ineffective assistance of his retained counsel, Louisa Pensanti. The motion was made through new counsel.

*(a) Woodberry Declaration*

Woodberry submitted an affidavit in support of his motion. Woodberry declared: After his great-grandmother retained Pensanti to represent him, he tried to contact her on numerous occasions. He also asked his great-grandmother to contact her. Pensanti never contacted him. The first opportunity he had to speak with Pensanti was in the morning his trial started.

Pensanti's associate visited Woodberry in jail. Woodberry gave her the names, phone numbers and addresses of witnesses he wanted called. Pensanti never contacted the witnesses. When the trial court asked Pensanti whether there are any defense witnesses, Pensanti turned to Woodberry and asked if he had any witnesses. When Woodberry told her he provided witness information to her associate, she replied that she did not need any of his witnesses.

While Davis was testifying at trial, Woodberry told Pensanti that he knew Davis, that Davis is a gang member, and that Davis and members of his family are known to sell drugs.

*(b) Lujan Declarations*

Baselisa and Luis Lujan submitted affidavits declaring that Woodberry was at home at the time the robbery took place.

Baselisa also declared that she continually called Pensanti's office to discuss the case and request that she visit Woodberry at the jail. Pensanti never returned her calls and never visited Woodberry. Baselisa said she spoke to Pensanti's assistants about witnesses, but she was never able to discuss the information with Pensanti. Pensanti did not discuss anything with her prior to her testimony.

3

*(c) Dove Declaration*

Austin Dove represented Woodberry's codefendant at trial. Dove declared: Prior to trial, the prosecution provided the defendants copies of the recording of the 911 call. The recording was important because Davis, who knew Woodberry, did not name Woodberry during the call. When Dove asked Pensanti about the 911 call, she said she had not listened to the recording. In addition, Dove noticed that Davis's description of the suspects conflicted with Woodberry's appearance. Pensanti addressed neither of these issues in representing Woodberry.

Prior to trial, Pensanti filed a motion for a continuance indicating she was not ready for trial. When the case was sent to the trial court, however, she announced she was ready. It was clear she was not ready.

Pensanti volunteered that her office was "'being raided'" by the police. She stated, "'[T]his is the best place for me to be.'"

During Pensanti's cross-examination of Davis, the trial court asked her about the basis for her questions. She replied that she just found out about the information from her client when he talked to her before lunch.

*(d) Maewether's Declaration*

Thomas Maeweather is a private investigator retained by Woodberry's new counsel to assist in a motion for a new trial. Maeweather declared: He conducted interviews with Woodberry's family members and a friend. All made themselves available to him and were "more than willing" to speak with him. None had been interviewed by a defense investigator or attorney. Woodberry's uncle, David O'Neal said he saw Woodberry at home at the time of the robbery.

The trial court denied the motion. The court stated that based on its recollection of the trial it could not find Pensanti was ineffective or that anything she did or failed to do would have led to a different result.

DISCUSSION

A defendant claiming ineffective assistant of counsel has the burden of demonstrating both that his counsel's performance was deficient when measured

4

against the standard of a reasonably competent attorney and that counsel's deficient performance resulted in prejudice to the defendant. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 691-692.) To show prejudice a defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. (*Id.* at p. 694.)

Woodberry argues that Pensanti made no meaningful contact with him or his family, in spite of numerous attempts to reach her. But Woodberry fails to show that it is reasonably probable he would have obtained a more favorable result had Pensanti contacted him.

Woodberry claims he had vital information for Pensanti. The information included an alibi and the names of additional witnesses. But Baselisa and Luis Lujan testified Woodberry was at home at the time of the robbery. The jury did not believe them. Woodberry does not explain why the jury would be more likely to believe any other alibi witnesses. Woodberry claims Pensanti called the Lujans as witnesses without ever interviewing them. But he fails to explain how their testimony would have been more favorable to him had they been interviewed.

Woodberry's claim that Pensanti failed to investigate suffers from the same defect. The only specific information Woodberry's investigator found post-trial was that another uncle could have testified Woodberry was at home at the time of the robbery. That is the same alibi evidence the jury heard from other witnesses, and rejected.

Woodberry claims Pensanti was not prepared. He argues her lack of preparation resulted in her eliciting that Woodberry's codefendant was accused of using a "Tech Nine pistol" in another crime. But the record shows the prosecutor elicited that information. In any event, the jury found the firearm allegations not true for Woodberry and acquitted his codefendant of all charges.

Dove, who represented Woodberry's codefendant, declared that Pensanti failed to address at trial the 911 call or that Davis's description of the suspects conflicted with Woodberry's appearance.

5

A recording of the call contains Davis's voice and Davis did not identify Woodberry as one of the robbers during the call. But Davis identified Woodberry when the police arrived in response to the 911 call. Moreover, it was uncontested that Davis knew Woodberry from previous encounters. Woodberry has failed to show it is reasonably probable he would have obtained a more favorable result had Pensanti addressed the 911 call or Davis's description of the suspects.

Woodberry claims that Pensanti failed to discuss with him whether he should testify. But the record shows otherwise. The following colloquy took place at trial:

"THE COURT: . . . Ms. Pensanti, did you talk to [Woodberry] about his Constitutional right not to testify or to testify?

"MS. PENSANTI: Yes. I did.

"THE COURT: Did you point out those areas that you felt he would have to testify to that would help his case and other areas that might hurt his case?

"MS. PENSANTI: Yes. I did.

"THE COURT: Did you point out those areas that you felt [the prosecutor] would probably focus in on, based on his testimony?

"MS. PENSANTI: Yes. I did.

"THE COURT: And did you explain to him that there was a Constitutional right, personal and unique to him, and that he and only he could waive that right, you could only recommend?

"MS. PENSANTI: That is correct. I did.

"THE COURT All right. Mr. Woodberry, did you folks in fact have that conversation?

"DEFENDANT WOODBERRY: Yes. We did."

Finally, the trial judge who presided over the trial is in the best position to determine whether Pensanti's representation was deficient. Here the trial court expressly found Pensanti's representation was not deficient.

## II.

Woodberry contends the judgment is not supported by substantial evidence.

In reviewing the sufficiency of the evidence we view the evidence in a light most favorable to the judgment.  (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)  We discard evidence that does not support the judgment as having been rejected by the trier of fact for lack of sufficient verity.  (*People v. Ryan* (1999) 76 Cal.App.4th 1304, 1316.)  We have no power on appeal to reweigh the evidence or judge the credibility of witnesses.  (*People v. Stewart* (2000) 77 Cal.App.4th 785, 790.)  We must affirm if we determine that any rational trier of fact could find the elements of the crime or enhancement beyond a reasonable doubt.  (*People v. Johnson*, *supra*, at p. 578.)

Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.

Here the evidence viewed in a light most favorable to the judgment shows:  Four men, including Woodberry, accosted Davis.  One of the men displayed a handgun.  Woodberry punched Davis in the eye and took $1,000 and an eight ball of methamphetamine from Davis's pockets.  Davis knew Woodberry from previous encounters and identified him at trial.  That is substantial evidence to support the judgment.

Woodberry's contention is based on conflicts and inconsistencies in Davis's testimony.  But conflicts and inconsistencies in a witness's testimony do not justify reversal.  (*People v. Harlan* (1990) 222 Cal.App.3d 439, 453.)  It is the exclusive province of the jury to determine the credibility of a witness.  (*Ibid.*)  Here the jury found Davis's testimony credible.  We have no power to disturb that finding on appeal.

7

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P. J.


We concur:


YEGAN, J.


PERREN, J.

8

Bruce F. Marrs, Judge

Superior Court County of Los Angeles

_____

Lori-Ann C. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Scott A. Taryle, Supervising Deputy Attorney General, Stacy S. Schwartz, Deputy Attorney General, for Plaintiff and Respondent.