Filed 6/30/14  P. v. Gallarzo CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br>     v. <br><br> MIGUEL RODRIGUEZ GALLARZO, <br><br>     Defendant and Appellant. | D063434 <br><br><br> (Super. Ct. No. SCS251321) |

APPEAL from a judgment of the Superior Court of San Diego County, Edward P. Allard III, Judge.  Affirmed.

Elisa A. Brandes, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Miguel Rodriguez Gallarzo appeals from a conviction by jury, contending the trial court erred in excluding expert witness testimony in support of his defense that witnesses had been improperly influenced to make false or inaccurate statements to law enforcement and/or in court testimony concerning molestation events.

Because we conclude the court properly exercised its discretion when it found the proposed expert testimony would serve no useful purpose in assisting the jury or disabusing it of any commonly held misconceptions, we reject his contention and affirm his judgment of conviction.

I

FACTS AND PROCEDURAL HITORY

A. *Brief Facts*

1. Incident with C.O.

On August 26, 2011, Gallarzo's sister-in-law, Carmen G., was visiting Gallarzo's house with her four-year-old granddaughter C.O. Carmen found C.O. in the bedroom with Gallarzo in a suspicious position: C.O. was sitting on the bed and Gallarzo was bent down towards C.O.'s legs. Alexis, C.O.'s four-year-old cousin, was also in the room, playing on the floor. Carmen feared the worst and screamed "What are [*sic*] doing with the girl"; Gallarzo responded that he was putting on her shoes.

Later, after initially denying that anything happened, C.O. told Carmen that Gallarzo had touched her private parts, stating, "he touched my *colita* with his fingers."

The next day, C.O. went to the police station with her mother Karla and grandmother Carmen. Carmen recalled similar past behavior of Gallarzo with other children, and thus checked with her other granddaughters regarding their interaction with Gallarzo. More potential victims were identified and brought in for questioning.

At trial, then five-year-old C.O. demonstrated for the jury how Gallarzo had "cup[ped] her vagina" and testified she told Gallarzo she did not like it.

2

2.  Incident with Y.H.

Y.H., 14 years old at the time of trial, recounted an incident in 2011 involving Gallarzo. Y.H. was the granddaughter of Gallarzo's wife's friend. Y.H. had been at Gallarzo's house along with a cousin, helping with a garage sale.

Y.H. and her then seven-year-old cousin V.C. went inside the house to use the bathroom. Gallarzo asked the girls if they wanted him to come inside the bathroom with them. The girls refused. Gallarzo subsequently "caressed [Y.H.'s] shoulders," slid his hands above her breasts, and commented that she was "really pretty" and "very well developed."

3.  Incidents with P.C.

P.C., 20 years old at the time of trial, testified that her uncle Gallarzo had been molesting her since she was five or six. P.C. testified that Gallarzo routinely pulled off her pants, and on occasions touched her vagina, licked her chest and attempted to force his penis in or on her vagina.

B.  *Procedural History*

Gallarzo was charged in counts 1, 2 and 4 through 10 with a forcible lewd act upon a child in violation of Penal Code Section 288, subdivision (b)(1), and in count 3 with a lewd act against a child in violation of Penal Code Section 288, subdivision (a). Victims P.C., C.O., and Y.H. were alleged to be under the age of 14 at the time of the molestations.

3

In October 2012, a jury found Gallarzo guilty on all 10 counts. All three victims testified, as did a victim of an uncharged act. A video recording of a forensic interview of C.O. was played for the jury.

Gallarzo was sentenced to an indeterminate term in state prison of 180 years to life, as follows: consecutive terms of 25 years to life on each of counts 1 through 3, plus consecutive terms of 15 years to life on each of counts 4 through 10.

C. *The Defense and the Proposed Expert Testimony*

At trial, the defense argued to the jury that there was a strained relationship between Gallarzo and Carmen because of a previous incident where Gallarzo had accused Carmen of infidelity. The defense thus argued the prosecution's evidence was rife with exaggerations and manipulations motivated by Carmen's family's vindictive attitude towards Gallarzo.

In a motion in limine, defense counsel sought to introduce the expert testimony of psychologist Mitchell L. Eisen, Ph.D., on the subjects of childhood suggestibility and cognitive ability. In particular, Dr. Eisen was prepared to testify on suggestive interviewing techniques, false memory creation in adolescents and adults, stereotype induction, coaching, language abilities, and Child Sexual Abuse Accommodation Syndrome.

According to the defense, this testimony was important to "rebut the myth" that children do not lie about incidents of sexual abuse. Dr. Eisen's testimony was offered to establish "[t]hat developmental and psychological principles exist which explain how child interviews and other social factors work as an influence process and why children

4

can be influenced to make false or inaccurate statements concerning events to law enforcement and in court."

The record shows the court excluded the proposed expert testimony, ruling it was just "common sense" and that it "would not assist the trier of fact." After a review of the literature that in part formed the basis for Dr. Eisen's testimony, the court rejected the notion that a "myth" existed as to the credibility of child witnesses in molestation cases and ruled in any event the proposed testimony did not go to "the issue of the sort of myth that kids sort of say something, and they're automatically believable."

The record also shows the court denied an Evidence Code section 402 hearing requested by the defense. The court, however, instructed the jury with CALCRIM 330[1] regarding the testimony of children 10 years of age or younger.

## II

## DISCUSSION

On appeal, Gallarzo contends that all three victims did not complain of Gallarzo's misconduct voluntarily: C.O. was first questioned by Carmen, and P.C., and Y.H. only went to the police after being told of the incident involving C.O. In other words,

---

[1]    CALCRIM 330 States: "You have heard testimony from a child who is age 10 or younger. As with any other witness, you must decide whether the child gave truthful and accurate testimony. [¶] In evaluating the child's testimony, you should consider all of the factors surrounding that testimony, including the child's age and level of cognitive development. [¶] When you evaluate the child's cognitive development, consider the child's ability to perceive, understand, remember, and communicate. [¶] While a child and an adult witness may behave differently, that difference does not mean that one is any more or less believable than the other. You should not discount or distrust the testimony of a witness just because he or she is a child."

Gallarzo submits that each of the witnesses was led to believe that if she did not come forward, she allegedly would be putting other victims at risk.

Gallarzo therefore contends the court violated his due process rights when it refused to admit the expert testimony of Dr. Eisen because Dr. Eisen's testimony would have helped the jury understand how the reliability of each of these victims was potentially compromised by allegedly improper and repeated interviewing techniques and stereotype induction. Gallarzo further contends the prosecution was permitted to introduce hearsay evidence in the form of statements by C.O., which was improper without Dr. Eisen's testimony regarding the suggestive nature of questioning and events leading up to the hearsay.

A. *Guiding Principles*

We review the trial court's decision to exclude expert witness testimony for abuse of discretion. (See *People v. McDonald* (1984) 37 Cal.3d 351, 373 (*McDonald*) ["where expert opinion evidence is offered, much must be left to the discretion of the trial court"], overruled on another ground as stated in *People v. Mendoza* (2000) 23 Cal.4th 896, 914.) However, such discretion is not unlimited. (*McDonald*, at p. 373.) Due process rights under the U.S. Constitution, and the right to a fair trial are violated when the trial court excludes "relevant evidence of *significant* probative value to [the] defense." (*People v. Babbitt* (1988) 45 Cal.3d 660, 684-685; cf. *California v. Trombetta* (1984) 467 U.S. 479, 485.)

6

"If a witness is testifying as an expert, his [or her] testimony in the form of an opinion is limited to such an opinion as is . . . [r]elated to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact." (Evid. Code, § 801 subd. (a).)  Thus, if nothing about the proposed testimony is sufficiently beyond common knowledge, such testimony is properly excluded.  (See *McDonald*, *supra*, 37 Cal.3d at p. 365; see also *Easton v. Strassburger* (1984) 152 Cal.App.3d 90, 106 [noting that " '[t]he correct rule on the necessity of expert testimony has been summarized by Bob Dylan: "You don't need a weatherman to know which way the wind blows" ' "].)

In *McDonald*, our Supreme Court held the expert's proffered testimony was beyond the common knowledge of the jurors, and hence useful to the jury.  (*McDonald*, *supra*, 37 Cal.3d at p. 375.)  The expert in *McDonald* proposed to testify on the unreliability of eyewitness identification.  (*Ibid.*)  The court stated that the "eyewitness identification of the defendant [was] a key element of the prosecution's case but [was] not substantially corroborated by evidence giving it independent reliability, and the defendant offer[ed] qualified expert testimony on . . . factors shown by the record . . . not likely to be fully known to or understood by the jury."  (*Id.* at p. 377.)  Hence, the court ruled it was error to exclude such testimony.  (*Ibid.*)

The *McDonald* court also cautioned that the labeling of psychological expert testimony as " '[usurpation of] the function' of the jury" or " '[invasions of] the province of the jury' " whenever such testimony could potentially affect the jury's determination of a witness's credibility was unjustified.  (*McDonald*, *supra*, 37 Cal.3d at p. 370, citing to 7

7

Wigmore on Evidence (Chadbourn rev. ed. 1978) § 1920, p. 18 & § 1921, p. 22.) It referred to such language as legal cliché that was "impracticable and misconceived," urging the court to consider instead if the testimony would be important and useful to the jury and perhaps necessary for a proper decision on a difficult issue. (*McDonald*, at p. 370.)

B. *Usefulness to the Jury of Proposed Expert Testimony*

In general, California courts have recognized that a " ' "psychiatrist's testimony on the credibility of a witness may involve many dangers: the psychiatrist's testimony may not be relevant; the techniques used and theories advanced may not be generally accepted; the psychiatrist may not be in any better position to evaluate credibility than the juror; difficulties may arise in communication between the psychiatrist and the jury; too much reliance may be placed upon the testimony of the psychiatrist; partisan psychiatrists may cloud rather than clarify the issues; [and] the testimony may be distracting, time-consuming and costly." ' " (*People v. Alcala* (1992) 4 Cal.4th 742, 781-82.)

We recognize, as Gallarzo submits, that courts from other jurisdictions have allowed expert testimony similar to the proffered testimony here. (See, e.g., *State v. Sloan* (Mo.Ct.App. 1995) 912 S.W.2d 592, 597.) We also recognize, however, that other courts have excluded such proposed expert testimony. (See, e.g. *State v. Ellis* (Me.1996) 669 A.2d 752, 753-754.)

Gallarzo contends that *People v. Harlan* (1990) 222 Cal.App.3d 439 (*Harlan*) supports his position and suggests that expert testimony be allowed in cases involving child witnesses. The *Harlan* court stated that although "California law does not require

8

corroboration of the testimony of a child sexual abuse victim," where the prosecution's case is based on uncorroborated evidence, expert testimony such as the testimony in *McDonald* may be more appropriate for the defense. (*Id.* at pp. 453-454 ["A defendant may, under current law, offer expert testimony to challenge the victim's testimony in appropriate cases, preserving the jury's right to make ultimate determinations on the credibility of the witnesses."].)

We conclude this statement from *Harlan* does not apply in our case. First, unlike the circumstances in *Harlan*, here the prosecution's case was based on evidence from at least *three* witnesses, at least one of whom was an adult at the time of the trial.[2]

Second, *Harlan* still allows for broad latitude in the trial court's discretion in admitting expert testimony. Here, the record shows the trial court properly exercised that discretion when it reviewed the literature associated with Dr. Eisen's testimony and then ruled to exclude that testimony.

In any event, the defense's purpose in attempting to introduce the proposed testimony in the instant case was not to explain to the jury that the witnesses had indeed been subject to improper interviewing techniques, but rather to "rebut the myth" that children do not lie about sexual abuse. The trial court found that such a misconception did *not* exist and thus there was no need to rebut it.

Indeed, in child abuse cases (as CALCRIM 330 suggests), the commonly held belief is that children are *less* credible witnesses. Several cases have dealt with expert testimony that seeks to bolster a child's credibility to rebut this common misconception

---

[2]     See discussion *post.*

9

and to explain away inconsistencies and delays in abuse reporting.  (See, e.g. *People v. McAlpin* (1991) 53 Cal.3d 1289, 1300-1301[ruling the court did not abuse its discretion in admitting the testimony of an expert to explain delays in parental reporting]; *People v. Patino* (1994) 26 Cal.App.4th 1737, 1744-1745 [allowing expert testimony for the limited purpose of disabusing a jury of misconceptions it might have about how a child reacts to a molestation]).

We also conclude Dr. Eisen's testimony was not required to assist the jury in evaluating the alleged hearsay statements (i.e., videotape of forensic interviews) of witness C.O.  As mentioned, the record suggests Dr. Eisen was not going to testify that the forensic questioning was inappropriate and hence untrustworthy in this case; instead, his proposed testimony generally dealt with rebutting the "myth," as noted, and/or the potential pitfalls of child-interviewing techniques.  In any event, this alleged hearsay evidence was but a small portion of the prosecution's case, inasmuch as several witnesses—including C.O. herself—testified at trial regarding the molestations.  (See *People v. Sanders* (1995) 11 Cal.4th 475, 510 [concluding that there was no undue prejudice in refusing to admit expert eyewitness testimony because the prosecution's case was independently strong].)

Because it would not have been useful to the jury, we conclude the trial court properly exercised its broad discretion when it ruled to exclude the proposed testimony of Dr. Eisen.

C.  *Significance of Excluded Testimony to Gallarzo's Defense*

Having held the court properly exercised its discretion when it ruled Dr. Eisen's proposed testimony would not assist the jury, it is unnecessary to resolve whether the exclusion of such evidence undercut Gallarzo's main line of defense.  (See *McDonald*, *supra*, 37 Cal.3d at p. 376.)  Nonetheless, we note that P.C. was an adult and Y.H. was 14 at the time of trial.  Thus, we separately conclude the court did not err when it excluded the proposed testimony of Dr. Eisen at least with regard to the alleged myth of *childhood* suggestibility.

D.  *Due Process*

Finally, because the proposed testimony of Dr. Eisen was not useful to the jury, we also conclude the exclusion of such testimony did not deprive Gallarzo of the right to present a defense as guaranteed under the Sixth and Fourteenth Amendments.  (See, e.g., *People v. San Nicolas* (2004) 34 Cal.4th 614, 661-662.)

## DISPOSITION

The judgment of conviction is affirmed.

BENKE, J.

WE CONCUR:

McCONNELL, P. J.

AARON, J.

11