Filed 7/3/14  P. v. Anthony CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059097 |
| v. | (Super.Ct.Nos. FSB1001370 & FWV1203150) |
| STEVE EMMANUEL ANTHONY, JR., | **OPINION** |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Jon D. Ferguson, Judge.  Affirmed.

Patricia M. Ihara, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Eric Swenson, and Barry Carlton, Deputy Attorneys General, for Plaintiff and Respondent.

# I

## INTRODUCTION

On April 18, 2013, a jury found defendant and appellant Steve Anthony, Jr., guilty of two counts of second degree burglary under Penal Code[1] section 459. The trial court sentenced defendant to three years in state prison for count 1 and to a consecutive eight months for count 2. Defendant had a trailing probation revocation case involving a violation of Health and Safety Code section 11379.2, sale or possession for sale of ketamine. The court sentenced defendant to a concurrent three-year state prison term on the trailing case.

On appeal, defendant contends that his conviction for one of the burglaries is not supported by substantial evidence and the trial court erred in sentencing him to state prison instead of county jail. For the reasons set forth below, we shall affirm the judgment.

# II

## STATEMENT OF FACTS

On July 21, 2012, at about 4:00 p.m., defendant attracted the attention of a Macy's sales associate Katherine Stachurski in Rancho Cucamonga. Stachurski called security. Based on her call, Loss Prevention Detective Daniel Renteria used the store's video monitoring system to find defendant; he was approaching the Diesel clothing display. After locating defendant, Renteria zoomed in on a pair of Diesel jeans lying near

---

[1] All statutory references are to the Penal Code unless otherwise specified.

2

Stachurski's station. The jeans had the wrong tag on them; the tag belonged to a pair of "Wear Black" shorts priced at $40. The correct price for the jeans was $218 that day.

Renteria turned his attention back to defendant. He saw defendant in the Diesel clothing area; defendant had three pairs of Diesel jeans in his hands, worth $280 each. Defendant carried the Diesel jeans over to the American Rag department. There, defendant selected three pairs of American Rag jeans; the jeans were marked at $30 each, with an additional 50% off. Defendant then carried all six pairs of jeans to the fitting room. Eventually, defendant came out of the fitting room. Now, the Diesel jeans had the American Rag tags on them and the American Rag jeans had no tags on them. The Diesel tags were in the fitting room.

Back at his monitor, Renteria saw defendant dump the American Rag jeans in the young men's department. Defendant then carried the Diesel jeans out of the clothing department and into the fragrance department; he presented them for purchase. Renteria notified the sales clerk to do a price check on the jeans and to sell them for the correct price, $280 per pair. Unable to buy the $840 worth of Diesel jeans for $45, defendant immediately left the store.

Five months later, around 4:00 p.m. on December 12, Renteria saw defendant in the same Macy's store in Rancho Cucamonga. Defendant was carrying Diesel jeans again. Renteria saw defendant go to the Lacoste shirt display where he looked at some polo shirts priced at $89.50. From there, defendant went to the Club Room display, where he picked out a large gray polo shirt. He then went back to the Lacoste display and picked out polo shirts in gray and green.

3

Clothing in hand, defendant went to the fitting rooms where he stayed in one stall for about thirty minutes. When defendant emerged, he left the Club Room shirt, which no longer had a tag on it, on a rack. He still had two pairs of Diesel jeans with him.

This time, defendant went to the kid's department to pay for the clothing. The sales clerk rang up the transaction, and defendant paid in cash. As the items were being bagged, Renteria intervened and took defendant back to the loss prevention office.

Renteria looked at the items defendant just purchased. One was the $89.50 Lacoste shirt with a Club Room tag for $8.99. The other was one pair of Diesel jeans, priced at $218, but with a Royal Premium tag for $40. The Royal Premium jeans were on sale that day for $24.99. Defendant, therefore, paid the cashier a total of $36.61 for the $307.50 worth of clothing.

Renteria called the police. Sheriff's Deputy Matthew Mondry responded. Deputy Mondry interviewed defendant. Defendant initially denied everything then admitted that he had come in that day and swapped price tags, which had been his intention when he entered the store. After Deputy Mondry showed defendant stills from the July surveillance video, defendant admitted that he had switched tags on that date, too. Defendant admitted to the deputy that he had gone to Macy's on several occasions to switch tags.

# III

## ANALYSIS

A. *Substantial Evidence Supports Defendant's Conviction*

Defendant contends that there was insufficient evidence that he intended to commit theft when he entered Macy's in July. Defendant's argument is without merit.

When the sufficiency of evidence is challenged on appeal, we must "review[] the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Davis* (2009) 46 Cal.4th 539, 606.)

Under section 459, burglary requires a specific intent to commit a theft or a felony upon entering a building. Therefore, in order to be convicted of burglary, the People had to prove that defendant had intended to commit a felony or a theft when he entered the Macy's store. (*People v. Deptula* (1962) 58 Cal.2d 225, 228.) Such proof is rarely direct; instead, it depends on the circumstances. (*People v. Holt* (1997) 15 Cal.4th 619, 669.)

In this case, defendant's attempted theft in July required thought and strategy. Defendant had to conceive of the idea of switching tags on different merchandise, determine which items were similar but priced differently to maximize the switching of tags, find a secluded place to physically switch the tags, discard the no-longer-tagged clothing in the store, find a register where the cashier would be less likely to recognize the mislabeled items, and then, finally, attempt to make the purchase. Here, defendant

5

picked a high-priced jean, $280 per pair, to purchase; then he picked a store-brand jean reduced for clearance at $15 per pair. Moreover, after the transaction was declined, defendant did not continue to shop. He immediately left the store. There is ample evidence to support the inference that defendant went into the Macy's store with an intent to commit this crime.

Moreover, as detailed above, defendant went back to Macy's five months later and did the exact same thing. On December 12, defendant again switched tags on some Diesel jeans. As before, he hunted down pants that were not only cheaper regularly, but on sale that day. He proceeded to switch the tags in the dressing room, just as he had before. Once he had the tags switched, he took the items to a cash register in a department other than the men's clothing department to make his purchase. In sum, he used the same maximum profit-maximizing and minimal probability-of-detection strategies that he had used in July. The only difference in December was that he also switched tags from some cheap shirts to expensive Lacoste shirts.

Furthermore, in addition to the above, upon being arrested in December, defendant admitted that he had entered the store that day in December with an intent to steal. He also admitted that he had gone to Macy's repeatedly to switch price tags.

Notwithstanding the above, defendant argues that the evidence was insufficient to support the conviction that defendant intended to commit a theft upon entering Macy's in July because the evidence showed that defendant "could have" entered the store to purchase the Diesel jeans and decided to switch tags after he discovered the price of the jeans. The evidence "could" show this. However, what defendant forgets is that the

6

evidence also supports the conclusion that the jury made – that defendant entered the store with an intent to switch the tags. Under the substantial evidence standard of review, it is not our job to reweigh the evidence. In determining whether substantial evidence exists, "we do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses." (*People v. Cortes* (1999) 71 Cal.App.4th 62, 71; see also *People v. Jones* (1990) 51 Cal.3d 294, 314.) "Although it is the duty of the [trier of fact] to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the [trier of fact], not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. "'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.'"" (*People v. Bean* (1988) 46 Cal.3d 919, 932-933.)

Based on the above, we find that defendant's conviction is supported by substantial evidence.

B. *The Trial Court Properly Sentenced Defendant*

Defendant contends that the trial court improperly sentenced him to serve his prison time in state prison instead of county jail because section 1170, subdivision (h) mandates local custody.

In this case, defendant's trial served a dual purpose – to determine whether he was guilty of burglary and whether he had violated probation on two prior cases. One of the prior cases involved possession for sale, or sale, of ketamine, in violation of Health and

Safety Code section 11379.2. After the trial on the burglaries, the court found defendant in violation of probation on the ketamine case and sentenced him to three years in state prison, to run concurrently with the sentence on the burglary counts.

County jail prison sentences are established by section 1170, subdivision (h), which applies to felonies "punishable pursuant to this subdivision." (§ 1170, subds. (h)(1) and (2).) Section 1170, subdivision (h), states: "(1) Except as provided in paragraph (3), a felony punishable pursuant to this subdivision where the term is not specified in the underlying offense shall be punishable by a term of imprisonment in a county jail for 16 months, or two or three years. [¶] (2) Except as provided in paragraph (3), a felony punishable pursuant to this subdivision shall be punishable by imprisonment in a county jail for the term described in the underlying offense."

Health and Safety Code section 11379.2, possession for sale or sale of ketamine, provides that violators "shall be punished by imprisonment in the county jail . . . or in the state prison." No mention is made of section 1170. Therefore, under Health and Safety Code section 11379.2, county jail time is not mandated. However, by contrast, other provisions surrounding section 11379.2 expressly provide for punishment under section 1170, subdivision (h). (See Health & Saf. Code, §§ 11377, subd. (a); 11378; 11378.5; 11379, subd. (a); 11379.5, subd. (a); 11379.6, subd. (a).) Therefore, there is no question that a violation of Health and Safety Code section 11379.2 is a state prison eligible offense.

8

As noted by defendant, the Legislature modified Health and Safety Code sections 11377, 11378, 11378.5, 11379, 11379.5, and 11376.6 in 2011 to substitute the language "pursuant to subdivision (h) of Section 1170 of the Penal Code" and in place of the deleted phrase "in the state prison." The Legislature, however, specifically did not modify section 11379.2 to mandate sentencing under section 1170, subdivision (h). Defendant argues that because "[p]osession for sale of the drug ketamine is not significantly different from the drug related crimes in the surrounding statutes that were modified in 2011 [to mandate punishment under section 1170, subdivision (h)], . . . the more reasonable result is that punishment for the crime of possession of ketamine for sale is to be treated similarly to the surrounding statutes under section 1170, subdivision (h)." We hereby refuse to adopt defendant's interpretation of the statute to make a finding contrary to the clear wording of the statute and the changes expressly made thereto by the Legislature in 2011.

In conclusion, the trial court properly sentenced defendant to state prison for violating Health and Safety Code section 11379.2. Defendant's entire sentence, therefore, had to be served in state prison. (§ 1170.1, subd. (a) ["Whenever a court imposes a term of imprisonment in state prison, . . . the aggregate term shall be served in the state prison, regardless as to whether or not one of the terms specifies imprisonment in a county jail pursuant to [section 1170, subdivision (h)]."])

Therefore, we find that the trial court properly sentenced defendant to state prison.

## IV

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI _____
                                                J.

We concur:

RAMIREZ _____
                P. J.

CODRINGTON _____
                J.