Filed 11/17/25  P. v. Wangerin CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E085665 |
| v. | (Super.Ct.No. SWF2201164) |
| CHARLES BUBBA WANGERIN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Valerie A. Navarro, Judge.  Affirmed.

Laura Arnold, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

1

In this *Anders/Wende* matter,[1] defendant and appellant Charles Bubba Wangerin appeals from the trial court's entry of judgment following a jury verdict convicting him of 28 counts of lewd and lascivious touching of his girlfriend's daughter (Minor), from age seven until Minor was 13 years old (Pen. Code, § 288, subd. (a)), plus 4 counts of continuing to molest Minor after she turned 14 (*id.*, § 288, subd. (c)(1)).[2] The 28 counts were broken down in the information and proven at trial, to have occurred on separate occasions in seven distinct time periods of one year each, corresponding to the victim's age from seven years old to age 13. Within each of those seven time frames, the prosecutor alleged and proved defendant committed four acts of lewd touching each year: in particular, two acts of touching the victim's chest with sexual intent and similarly the victim's thigh. The four counts committed when the victim was 14 years old were similarly identified and proven. (See *People v. Cortes* (1999) 71 Cal.App.4th 62, 78-79 [prosecutor's discretion includes whether to charge grouped incidents as continuous sexual abuse under § 288.5—which has a higher base term than § 288—or separately under § 288, as here].) In a bench trial on aggravating circumstances, the court found the victim was particularly vulnerable and that defendant abused a position of trust to commit the offenses.

The court sentenced defendant to an aggregate term of 18 years eight months in prison. The sentence was comprised of the middle term of six (6) years on the first count,

[1] *Anders v. California* (1967) 386 U.S. 738; *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).

[2] All further statutory references are to the Penal Code unless otherwise indicated.

with concurrent terms on each of 21 other counts that were grouped together (essentially by the victim's age) in counts 2 to 4, counts 6 to 8, counts 10 to 12, counts 14 to 16, counts 18 to 20, counts 22 to 24, and counts 26 to 28. Plus, the court added 12 consecutive years by imposing terms of two years (one-third the midterm) for each of six other counts (i.e., counts 5, 9, 13, 17, 21, and 25), plus a consecutive term of eight months (one-third the midterm) for count 29, and concurrent terms on counts 30 to 32.

Our independent review of the record and the law discloses no issues of arguable merit on which to request briefing by the parties. (See *People v. Johnson* (1981) 123 Cal.App.3d 106, 109 ["an arguable issue" requires "a reasonable potential for success" on appeal].) We therefore affirm the judgment.

## BACKGROUND

The jury heard the victim's testimony, which was emotional. Minor testified that she met defendant when she was seven years old and living in Murrieta; she grew to regard him "like a father figure." When they were alone and playing video games in her room at her aunt's house, defendant over the years placed his hand "so many times" on or between her upper or inner thighs and on her nipples on her chest, both under and over her clothing. Defendant would stop touching her like that when someone walked in. The abuse was not limited to during video games, but included when they were "[t]alking or maybe coloring." The touching confused Minor; it was strange and made her feel bad about defendant, but she did not know it was wrong and "thought it was a normal thing" for a father-figure to do. The abuse continued through ages seven, eight, and nine.

3

When Minor was approximately 10 years old, in fifth or sixth grade, she and her mother, J.S. (Mother), moved in with defendant. The abuse continued, including defendant touching her legs when they were in the car or her legs and chest when watching a movie. When she began to develop breasts, he moved his hands around and squeezed them, but would stop whenever he heard someone approaching. Minor told Mother about the touching when she was 13 or 14 years old, at first only that he touched her legs. Mother was upset, said she would talk to defendant about it and the abuse stopped briefly, but then resumed after a couple of weeks. In high school, with the abuse ongoing, Minor told her Mother about the upper thigh touching again, and then subsequently a friend about the abuse, and then a school counselor, and then the school resource officer.

Mother testified that she did not construe the touching that Minor initially told her about to be sexually motivated. She believed defendant had a good relationship with Minor and was like a parent to her. After the school notified Mother that Minor reported the abuse, Mother made two monitored, recorded pretext phone calls to defendant. The calls were played for the jury. Defendant did not deny the touching (e.g., "I don't think she's making it up"), but denied doing so "intentionally." Mother described how defendant's voice sounded different on the calls; she did not believe his denials. She described Minor as a "straight-A student" and "a good kid," with no reason to fabricate the account ("There's no benefit to it," "it destroyed a lot of our lives").

The high school resource officer confirmed Minor reported the abuse to him and that he monitored the pretext calls. A forensic interviewer from the county's "Child

4

Assessment Team" testified that Minor disclosed the abuse to her in a recorded interview, which was played for the jury. A neuropsychologist testified for the prosecution, describing how memory operates differently for young children, including lack of precise details; she also explained Child Sexual Abuse Accommodation Syndrome.

During the defense, a psychologist described tests he administered and questions he asked of defendant, based on which he opined that defendant posed a low risk of committing child molestation. A defense witness who previously dated defendant when she had a daughter who was seven or eight years old at the time, and who remained longtime friends with defendant, testified he was trustworthy. Defendant babysat for her daughter between six and 12 times, with no concerns. The parties stipulated that electronic devices were seized from defendant's home and an ensuing forensic analysis was turned over to the defense two years after it had been conducted. The school resource officer acknowledged in his testimony that nothing of forensic value was found on the devices.

**APPEAL AND REVIEW**

Following the verdict, sentencing, and entry of judgment, defendant appealed. This court appointed appellate counsel. Counsel's review of the record and legal research uncovered no arguable issues to raise on appeal, including after consultation with Appellate Defenders, Inc. In reaching that conclusion, counsel noted a question for our potential consideration in our independent review: Did the trial court err in concluding defendant had " 'no traumatic circumstances within his childhood," justifying or

5

" 'giv[ing] th[e] Court . . . assurances' " against reoffense " 'to give a low-term sentence.' "

Having independently reviewed the record for potential error, we are satisfied defendant's attorney has fully complied with the responsibilities of counsel and no arguable issue exists.  (*People v. Kelly* (2006) 40 Cal.4th 106, 126; *Wende*, *supra*, 25 Cal.3d at pp. 441-442.)

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.


We concur:


McKINSTER
Acting P. J.


MENETREZ
J.