Filed 12/30/14  P. v. Bohan CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DALE E. BOHAN,<br><br>        Defendant and Appellant. | A139928<br><br>(Sonoma County<br>  Super. Ct. No. SCR624989) |

This is an appeal from judgment after a jury convicted defendant Dale E. Bohan of unlawfully taking and driving a vehicle without consent from the owner (Veh. Code, §10851, subd. (a)) (count one); misdemeanor brandishing a deadly weapon (Pen. Code, § 417, subd. (a)(1)) (count two);[1] and evading a pursuing police officer with wanton disregard for the safety of others (Veh. Code, §2800.2, subd. (a)) (count three).  On appeal, defendant seeks to overturn his conviction for count two, misdemeanor brandishing a deadly weapon, on the ground of insufficient evidence.  We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 9, 2013, a second amended information was filed charging defendant with the following crimes: unlawfully taking and driving a vehicle without consent of owner (Veh. Code, § 10851, subd. (a)) (count one); misdemeanor brandishing a deadly weapon (§ 417, subd. (a)(1)) (count two); evading a pursuing police officer with wanton disregard for the safety of others (Veh. Code, § 2800.2, subd. (a)) (count three);

---

[1]      Unless otherwise stated, all statutory citations herein are to the Penal Code.

1

attempted robbery (§ 664, § 211) (count four); and aggravated assault (§ 245, subd. (a)(1)) (count five). This information further alleged that defendant had sustained one prior prison term commitment (§ 667.5, subd. (b)); one prior strike (§ 1170.12); and one prior serious felony conviction (§ 667, subd. (a)(1)). On July 19, 2013, a jury trial began, at which the following evidence was presented.

## I.  The Prosecution's Case.

### A.  Count One.

On October 8, 2012, David Allen was working at a Santa Rosa residence, with his red Toyota truck parked in the driveway. Around 4 p.m., Allen loaded his tools onto his truck and placed the car keys onto the floor of the truck cab before returning to the residence to finish one last task. When he returned about 10 minutes later, his truck was gone. Allen immediately called the police to report his truck had been stolen along with several items inside the truck, including tools, a pocket knife, and wallet containing about $1,800 in cash.

The next day, Allen inspected his recovered truck at a tow yard. Allen discovered that his truck, previously in good condition, had been wrecked and that, inside the truck was a strange backpack containing clothes and documents with defendant's name and other personal information. Allen returned the backpack to the sheriff's office, and reported that his tools, keys, and about $1,200 in cash remained missing.

### B.  Counts Two and Three.

At about 6 p.m. or 7 p.m. on October 8, 2012, defendant approached the Fairie Ring campground and trailer park in Guerneville. Defendant, appearing dirty and under the influence of drugs, approached to within about four feet of Cynthia Crane, who was sitting outside of her trailer having a barbeque with several friends, including Sean Parker and Sara Ogletree. Defendant asked Crane for methamphetamine ("crystal") and for a person named "Chris." Crane advised defendant that he had come to the wrong place and requested that he leave. Defendant remained there, however, until Parker came forward to insist that he leave. Ten minutes later, defendant returned and requested "meth and

2

sex" from Crane or Ogletree. Parker again approached defendant, prompting him to retreat down the hill with his hands dug into his pockets.

Around this time, the campground manager, Sandra Brady, heard Crane yelling at someone to leave, and summoned her friend, Charlie Nielsen, who was working nearby. Brady recognized defendant as someone who had rented a campsite once or twice in the past. Defendant explained to Brady that he was looking for "Carla."

According to Brady, Nielsen told defendant in "simple, kind words" that he needed to leave. Nielsen also began "pulling on his shirt, kind of tapping him, being, you know, like trying to be like his buddy." Nielsen then went back to his work, leaving Brady to handle the situation. However, he returned almost immediately when the yelling between Brady and defendant intensified, and again tried to usher defendant from the campground.

Around this time, several people, including Crane, Ogletree and Parker, began coming down the hill toward Brady and defendant. Crane could hear defendant screaming at Brady. Brady's back was to this group, but she could hear people approaching. While the group was still approaching, Brady saw defendant pull out a knife, stating: "What, are you going to jump me?" She described the knife as 3.5-inches long and held at his waist with the blade pointing in her direction. Nielsen, who was next to Brady, saw that one of the men in the group, Parker, was carrying a stick, and that defendant "already had the knife out in his hand like, opened up in his hand." At trial, Nielsen described three men from this group, including Parker, as drunk and aggressive.[2]

Brady, after seeing the knife in defendant's hand, stepped back and grabbed her cell phone to call the police. Defendant, in turn, stepped back toward her: "I was about three to five feet away from him. I stepped back. He stepped in. I stepped back. He stepped in, I stepped way back, he stopped."[3] Eventually, Nielsen was able to escort

---

[2]  Nielsen also admitted that he was "probably" under the influence at the time.

[3]  Crane also confirmed that, when she and the others reached defendant and Brady after coming down the hill, defendant was already holding a knife in his right hand while

3

defendant to the exit after warning him that the police were on their way and that he needed to leave quickly. Defendant returned to his red truck and left. Brady, meanwhile, provided defendant's description and license plate number to the police dispatcher.

The next day, Ogletree and Crane saw defendant again in town at a bus stop. Ogletree walked into a nearby police station to report defendant's location. Both women later identified defendant in photographic lineups.

Deputy Sheriff Gary Thornton was dispatched to the campground at about 8:00 p.m. on October 8, 2012. Deputy Thornton made a U-turn after spotting a red truck approach from the opposite direction with a license plate number matching the suspect's. He activated the overhead lights and siren and began to follow the truck, which was travelling 40 to 50 miles-per-hour without stopping at stop signs. The truck increased its speed to 100 miles-per-hour after merging onto Highway 116. The truck then wrecked, however, after failing to maneuver a corner. Deputy Thornton approached the mangled truck, finding nobody inside but noticing blood in the truck cab.

Defendant was later apprehended by police at a bus stop in Guerneville. His clothing was wet and he had injuries to his face, hands and arm. In addition, he was in possession of a three-inch pocket knife and various papers, including DMV documents bearing David Allen's name.

## II.    The Defense Case.

Defendant testified in his own defense. Defendant explained that his mother had told him that she would leave keys for him inside a vehicle parked by a residence. Based on this information, defendant had assumed that the keys he found in the red truck were intended for him. Defendant further explained that he went to the Faerie Ring campground to stay the night and that, once there, he had asked several people at the campground whether they had seen Carol or Carla. He then left the area when they told him to do so.

---

"jumping around." Similar to Brady, Crane described defendant as holding this knife at waist level and "sticking [it] out a little bit."

Defendant next contacted Brady, the campground manager, to ask to stay the night. He walked away, however, when a man became confrontational toward him. He saw one man coming down the hill with a stick, and another man approaching him from behind. In response, he felt threatened and pulled out a knife. One man yelled at him to leave, and another man held him, stating: "Hold on, hold on." The man with the stick asked him: "Are you trying to jump me[?]" Defendant put the knife away when Brady warned him that she had called the police and when the man with the stick told him that he had no intention of "jump[ing]" defendant. Defendant thus walked away and left the campground.

Defendant then drove onto Highway 116, but ran off the road while trying to reach for cigarettes. He got out of the truck and fell into the river while in pain and in shock. Eventually, he walked to a bus stop in Guerneville to wait for the bus. While waiting there, he was arrested. He had not looked into the wallet that he was carrying after finding it in the truck.

Defendant acknowledged prior convictions for possession of stolen property (2001 and 2003), residential burglary (2003), and attempted commercial burglary (2010).

Defendant also presented an expert in eyewitness identification who discussed several factors weighing against the accuracy and reliability of such identifications, including bad lighting and the identifier's use of drugs or alcohol.

## III.    The Verdict, Sentencing and Appeal.

On August 9, 2013, the jury found defendant guilty of counts one through three – to wit, vehicle theft, misdemeanor brandishing a deadly weapon, and evading a police officer. The jury also found true the alleged prior prison term, prior strike, and prior serious felony conviction. A mistrial was declared as to counts four and five after the jury failed to reach a verdict. On September 27, 2013, the trial court sentenced defendant to a total term of nine years and four months in state prison. This timely appeal followed.

## DISCUSSION

Defendant's sole challenge is to the sufficiency of the evidence to support his conviction for the misdemeanor offense of brandishing a deadly weapon. As the jury in this case was instructed pursuant to CALCRIM No. 3470, a person is guilty of this offense under the following circumstances: "Every person who, except in self-defense, in the presence of any other person, draws or exhibits any deadly weapon whatsoever, other than a firearm, in a rude, angry, or threatening manner, or who in any manner, unlawfully uses a deadly weapon other than a firearm in any fight or quarrel is guilty of a misdemeanor, punishable by imprisonment in a county jail for not less than 30 days." (§ 417, subd. (a)(1).)

Where, as here, the defendant challenges the sufficiency of the evidence underlying his conviction, the reviewing court must examine the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence from which the jury could find the defendant guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 576-577.) Substantial evidence – meaning, evidence that is reasonable, credible and of solid value – must support each essential element of an offense. A judgment of conviction will not be set aside for insufficiency of the evidence to support the jury's verdict unless it is clearly shown there is no basis on which the evidence can support the jury's conclusion. (*Ibid.*)

On appeal, in determining whether substantial evidence supports the guilty verdict, we do not reweigh the evidence, resolve conflicts in the evidence or reevaluate the credibility of witnesses. (*People v. Jones* (1990) 51 Cal.3d 294, 314; see also *People v. Cortes* (1999) 71 Cal.App.4th 62, 71.) "Although it is the duty of the [trier of fact] to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the [trier of fact], not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably

6

be reconciled with a contrary finding does not warrant a reversal of the judgment." ' " (*People v. Bean* (1988) 46 Cal.3d 919, 932-933.)

Here, defendant challenges the adequacy of the evidence supporting the jury's finding with respect to one essential element of his offense – to wit, the element requiring that he must not have acted in self-defense when brandishing a knife on the evening in question. As the People acknowledge, the prosecutor carries the burden of proving that a criminal defendant did not act in self-defense. (*People v. Rios* (2000) 23 Cal.4th 450, 461-462.) Further, an act is justified as self-defense where the defendant "ha[d] an honest *and reasonable* belief that bodily injury is about to be inflicted on him. [Citation.]' [Citation.] The threat of bodily injury must be imminent [citation], and '. . . any right of self-defense is limited to the use of such force as is reasonable under the circumstances. [Citation.]' [Citations]; Civ. Code, § 50 ['Any necessary force may be used to protect from wrongful injury the person . . . of oneself . . . .']; Pen. Code, §§ 692 ['Lawful resistance to the commission of a public offense may be made: [¶] 1. By the party about to be injured . . . .'], 693 ['Resistance sufficient to prevent the offense may be made by the party about to be injured: [¶] 1. To prevent an offense against his person . . . .'].)" (*People v. Minifie* (1996) 13 Cal.4th 1055, 1064-1065.) Thus, in seeking to prove or disprove self-defense, "[t]he defendant's perceptions are at issue, and threats from a family and its friends may color a person's perceptions of that group no less than threats from an individual may color a person's perceptions of that individual. A defendant who testifies that he acted from fear of a clan united against him is entitled to corroborate that testimony with evidence 'tend[ing] in reason to prove' that the fear was reasonable. (Evid. Code, § 210 [defining relevant evidence].)" (*People v. Minifie, supra,* 13 Cal.4th at pp. 1066-1067.)

In arguing that the prosecutor failed to prove that he did not act in self-defense, defendant relies on the following evidence. First, at the time defendant pulled out the knife, he was surrounded by a group of angry and/or upset people, several of whom were drunk, yelling and aggressive, and one of whom carried a stick. In addition, defendant himself explained at trial that he only pulled out the knife because he felt threatened by

7

these persons. And, consistent with defendant's testimony, Nielsen testified that it looked to him as if defendant only pulled out the pocket knife to keep back these three men, who appeared more aggressive than defendant. Finally, defendant points to Brady's testimony that he never actually threatened her with the knife, and that he held the knife down by his waist, without raising it, the entire time. Under these circumstances, defendant insists that, as matter of law, his right to self-defense was established, thereby negating an essential element of his section 417, subdivision (a)(1), offense.

We disagree with defendant's argument. The applicable law is clear that, "[t]hird party threats, or even threats from the victim . . . do not *alone* establish self-defense. The victim's behavior is also highly relevant. There must be evidence the defendant feared imminent, not just future, harm." (*People v. Minifie, supra,* 13 Cal.4th at p. 1068.) Moreover, "the jury must still find the defendant's use of force was reasonable. In making this determination, it may give the evidence *whatever weight it deems appropriate*," including evidence of third-party threats. (*People v. Minifie, supra,* 13 Cal.4th at p. 1069 [italics added].)

In this case, there is sufficient evidence in the record, aside from the evidence relied upon by defendant, to undermine his theory that he reasonably pulled out the knife only after being threatened with imminent harm by the angry, aggressive and intoxicated men (one of which carried a stick). In particular, Crane, who was part of the group of people that came down the hill to the location where defendant and Brady were quarreling, confirmed that, by the time Parker grabbed the stick, "[defendant's] knife was out, yes." In addition, Brady testified that, "None of [the people who came down the hill] got between [defendant] and I. They were off to the side, but nobody got, you know, where I could view them." And when Brady was directly asked whether anyone threatened defendant before he took out the knife, Brady responded: "No." Even more significant, Brady described defendant taking multiple steps towards her, while holding the knife, even after she stepped away from him. Finally, further undermining defendant's claim that he faced the threat of imminent harm, Nielsen testified that "they weren't like rushing towards him. They were just coming over, you know."

As explained above:  " ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." ' " (*People v. Bean, supra,* 46 Cal.3d at p. 933.)  In this case, we conclude such circumstances exist.  Based on the substantial evidence described above, the jury had a reasonable basis for finding defendant guilty beyond a reasonable doubt of the section 417, subdivision (a)(1) offense.  (*People v. Johnson, supra,* 26 Cal.3d at pp. 576-77.)  Accordingly, the jury's verdict must stand.

## DISPOSITION

The judgment is affirmed.


_____

Jenkins, J.


We concur:


_____

McGuiness, P. J.


_____

Pollak, J.

9